# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROCIO MALDONADO-GOMORA** | : | **CIVIL ACTION** |
| *Plaintiff* | : | **NO. 20-2382** |
| | : | |
| **v.** | : | |
| | : | |
| **ANALYTICAL TECHNOLOGY,** | : | |
| **INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                          SEPTEMBER 8, 2020

## MEMORANDUM OPINION

**INTRODUCTION**

Rocio Maldonado-Gomora ("Plaintiff") filed a civil action against Defendants Analytical Technology Inc., Raymond Cromer, and Randall Fogal (collectively, "Defendants") in which she asserts claims of unlawful discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq*. Before this Court is Defendants' partial motion to dismiss Plaintiff's complaint filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), in which Defendants seek the dismissal of any and all claims, as untimely, that are premised on the harassment by one of Plaintiff's former co-workers. [ECF 8]. Plaintiff opposes the motion and argues that the claims are timely because they are subject to the *continuing violations doctrine*. [ECF 9].[1] The issues presented in the motion have been fully briefed, and the motion is ripe for disposition. For the reasons stated herein, Defendants' partial motion to dismiss is granted.

---

[1]     In adjudicating Defendants' motion, this Court has also considered Defendants' reply. [ECF 13].

**BACKGROUND**

In deciding a motion to dismiss, the court must accept all relevant allegations in the complaint as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Accordingly, the relevant factual allegations are summarized as follows:

In January of 2015, Plaintiff began working as an assembler at Analytical Technology, Inc. ("ATI"). Shortly after being hired, a co-worker identified in the complaint only as "Edward" began asking Plaintiff inappropriate questions and making inappropriate comments about her sex, race, and national origin. For example, Edward once told Plaintiff, who is Mexican, that "he liked having sex with Latin women[.]" Though Plaintiff reported Edward to her immediate supervisor, Randall Fogal, her report was not investigated and Edward was not disciplined. Edward's inappropriate behavior continued. Plaintiff again reported Edward to Fogal, and although Fogal said he would talk to Edward, nothing changed. Edward continued making comments about Plaintiff's racial and national identities. Plaintiff reported Edward to Fogal a third time, and Fogal responded by saying, "I'm not a babysitter," and telling Plaintiff to work things out with Edward. Though Plaintiff does not specify dates for when any of Edward's alleged conduct occurred, Plaintiff alleges that Edward left ATI in the Fall of 2018.

After Edward's departure, Plaintiff alleges that other co-workers harassed her. Plaintiff contends that a male co-worker, Dihru Patel, stroked Plaintiff's cheek and invaded her personal space. Days later, Patel told Plaintiff that he was concerned about drinking coffee because it might "prevent his penis from working." Plaintiff reported Patel to Fogal. Patel responded by sabotaging Plaintiff's work bench, unplugging all of her equipment and creating a "[dangerous] gas leak[.]" Plaintiff immediately reported the situation to Fogal and he simply told her to "stand up for" herself. Patel asked Plaintiff questions about her sexual experiences and if she used contraceptives. On one occasion, Patel made a comment using the phrase "you women," which Plaintiff understood to mean Mexican women. Plaintiff again reported Patel to Fogal, and Fogal again told Plaintiff to "stand up for" herself.

In addition to Patel, a separate group of co-workers, comprised of Gordon Fretz, Eric Lahr, Mark Lewis, and Arnold Weisberg, made "constant" comments about Plaintiff's ethnicity. As examples, Plaintiff alleges that they said, "What are we going to do with our Mexican?" After high-profile shooting attacks aimed at immigrants were featured in the news, the group said, "the immigrants who were shot got what they deserved," a statement Plaintiff believes was directed at her. Plaintiff reported the group's conduct to Fogal, who said that he ". . . never had these types of problems with anyone else and that it was always Plaintiff complaining."

2

Sometime later, Plaintiff was summoned to a meeting convened by Raymond Cromer ("Cromer"), Executive Vice President of ATI, who yelled at Plaintiff for her complaints and told her that she had to confront the four men that she had reported (Fretz, Lahr, Lewis, and Weisberg). Plaintiff rejected Cromer's instruction, fearing for her safety. On August 26, 2019, Rebecca Heller, a human resources employee, arranged for Fretz, Lahr, Lewis, Weisberg, Heller, Fogal, Cromer, and Plaintiff to gather together in a room where Cromer "commanded" Plaintiff to tell the four men what she reported about them. Weisberg and Lewis yelled at Plaintiff during the meeting.

On September 12, 2019, Plaintiff dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC"), alleging claims of discrimination based on race, sex, and national origin, and retaliation. On May 21, 2020, Plaintiff commenced this action. [ECF 1].

**LEGAL STANDARD**

Defendants filed the instant Rule 12(b)(6) motion to dismiss for failure to state a claim. When considering a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). To survive a motion to dismiss, the court must determine whether the plaintiff has alleged facts sufficient to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint may not merely allege a plaintiff's entitlement to relief—it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211. Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. A claim will not survive a motion to dismiss if, after construing the factual allegations in the light most favorable to the plaintiff, the court finds the plaintiff could not be entitled to relief. *Fowler*, 578 F.3d at 210.

"As a general rule, the court may only consider the pleading which is attacked by a 12(b)(6) motion in determining its sufficiency." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citations omitted).  However, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  *Id.*  Moreover, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court."  *Id.*

Here, Plaintiff's complaint makes reference to her charge of discrimination filed with the EEOC and PHRC, though she did not attach the documentation.  (Compl. at § 5).  Attached to their motion for partial dismissal, Defendants included a copy of the EEOC and PHRC charge.  Plaintiff has not objected to the authenticity of this documentation.  Therefore, this Court may consider Plaintiff's charge of discrimination in addition to the facts in the complaint.  *See McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 U.S. Dist. LEXIS 170719, at *8-9 (W.D. Pa. Dec. 4, 2013) (holding that in deciding a 12(b)(6) motion, the court "may rely upon the [] administrative charge" in ruling on the motion) (citing *Pryor*)).

**DISCUSSION**

As noted, Plaintiff alleges that she was subjected to unlawful discrimination on the basis of race, sex, and national origin, and to unlawful retaliation, in violation of Title VII and the PHRA. In their motion, Defendants argue that Plaintiff's claims premised on allegations of discrimination and harassment by Edward should be dismissed, as untimely.  In her response, Plaintiff disagrees and argues only that such claims survive pursuant to the *continuing violations doctrine*.  Plaintiff's argument is, however, misplaced and without merit.

"To bring suit under Title VII, a claimant . . . must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice," and to bring suit under the PHRA, "an administrative complaint must first be filed with the [PHRC] within 180 days of the alleged

act of discrimination." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 164-65 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1) and 43 Pa. Cons. Stat. § 959(h), respectively).  Any claims premised on wrongful conduct occurring outside the prescribed period must be dismissed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013); *Emmell v. Phoenixville Hospital Company, LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018 (citing *Morgan*)).  Here, Plaintiff dually filed the requisite charge of discrimination with the EEOC and the PHRC on September 12, 2019.  [ECF 8 at 6].  Thus, when applying the statutes of limitation cited, only claims for acts of discrimination which occurred on or after November 16, 2018 (300 days prior to September 12, 2019) are actionable under Title VII; and only claims for acts of discrimination which occurred on or after March 16, 2019 (180 days prior to September 12, 2019) are actionable under the PHRA.

Defendants have limited their motion to dismiss Plaintiff's claims to those claims that are based on Edward's conduct.  While Plaintiff fails to allege precisely *when* Edward's conduct actually occurred, it is clear from the complaint that Edward's harassment began sometime in January 2015 (around the time of Plaintiff's start date) and ended sometime before he left ATI in the Fall of 2018.  In her response, Plaintiff concedes that "[Edward's] alleged conduct did not occur within the statute of limitations under the federal or state statutes[.]"  [ECF 9-1 at 2].[2] Because more than 300 days passed between the date of Edward's last alleged harassing act and Plaintiff's filing of her administrative charge of discrimination, these particular claims under Title

---

[2]    In her response, Plaintiff makes no attempt to argue that Edward's conduct occurred within either of the applicable statutes of limitation.  Instead, she limits her argument to invocation of the continuing violations doctrine.

VII and the PHRA are time-barred "absent some exception to the 300-day rule." *Oliver v. Clinical Practices of the Univ. of Pa.*, 921 F. Supp. 2d 434, 443 (E.D. Pa. 2013).[3]

Plaintiff invokes the continuing violation doctrine as an "equitable exception to the timely filing requirement." *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Plaintiff's invocation is, however, misguided. The continuing violations doctrine allows courts to grant relief for time barred acts where such acts are part of a "continuing practice." *Id*. This doctrine "creates a 'narrow' and 'equitable exception to the timely filing requirement.'" *Gould v. Borough*, 615 F. App'x 112, 116 (3d Cir. 2015). "[I]n employment cases, the continuing violations analysis typically arises in the context of hostile work environment claims[,]" *Oliver*, 921 F. Supp. 2d at 444, because a "hostile work environment encompasses a single unlawful employment practice." *Morgan*, 536 U.S. 101, 117-18 (2002).[4] A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Id.* at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)); *Castleberry v. STI Grp*. 863 F.3d 259, 264 (3d Cir. 2017). Plaintiff argues that the continuing violations doctrine/exception applies to Edward's conduct, which she claims was part of a "pattern of unlawful discriminatory acts by co-workers" that collectively created a hostile work environment. [ECF 9-1 at 2].

---

[3] If Plaintiff's Title VII claims are time-barred, then the PHRA claims must be as well. *Leonard v. Bristol Twp. Sch. Dist.*, 2010 U.S. Dist. LEXIS 76187, at *9 (E.D. Pa. July 28, 2010).

[4] The doctrine does not apply to discrete discriminatory acts, even if they are related to timely alleged acts. *Mandel*, 706 F.3d at 165 (quoting *Morgan* 536 U.S. 113). "Discrete acts include, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Mandel*, 706 F.3d at 165 (quoting *Morgan*, 536 U.S. 114). As alleged, Edward's conduct does not include any discrete discriminatory acts.

6

When applying the continuing violations doctrine to a hostile work environment claim, a court may consider the "entire scope of a hostile work environment claim, including behavior alleged outside of the statutory time period, . . . so long as any act contributing to that hostile environment claim takes place within the statutory time period[.]" *Morgan*, 536 U.S. at 105. "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the ***same unlawful employment practice*** and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66 (citing *Morgan*, 536 U.S. at 122) (emphasis added). Essentially, the plaintiff must show that the time-barred acts of harassment are part of a persistent, on-going "pattern of actions which continues into the applicable limitations period," and are "more than . . . isolated or sporadic acts of intentional discrimination." *Mandel*, 706 F.3d at 165-66 (internal citations omitted).

Here, Plaintiff argues "there is no requirement under applicable law that there be a 'connection' between the unlawful discriminatory . . . acts of different actors that create a hostile work environment for an unlawful discriminatory environment to exist." [ECF 9 at 2; ¶ 8]. She further argues that under the continuing violations doctrine "it is irrelevant when the last act of [Edward] occurred because [Plaintiff] has alleged an act that occurred within the statute of limitations." [ECF 9-1 at 5]. Thus, the crux of Plaintiff's argument appears to be that because a hostile work environment encompasses a single unlawful employment practice, and she has alleged at least one hostile act within the relevant periods, the continuing violations theory automatically applies. Plaintiff's argument is, however, incorrect. To the contrary, it is not enough to merely allege an act within the relevant time period. *See Rush v. Scott Specialty Gasses*, 113 F.3d 476, 485 (3d Cir. 1997) (observing that the United States Court of Appeals for the Third Circuit ("Third Circuit") has "refus[ed] to adopt a *per se* rule that every hostile work environment

7

claim constitutes a continuing violation." (citing *West*, 45 F.3d at 755)).  Rather, Plaintiff must allege facts to show that Edward's conduct (which occurred outside the relevant limitations periods) was so related to the later acts that "the acts about which [Plaintiff] complains are part of the ***same actionable hostile work environment practice***[.]"  *Morgan*, 536 U.S. at 120 (emphasis added).  Further, Plaintiff's argument is directly contrary the Third Circuit's holding in *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545 (3d Cir. 2017).  There, the Third Circuit clarified the extent of the continuing violations doctrine with respect to hostile work environment claims, writing:

> Under [the continuing violations] doctrine, discriminatory acts that aren't individually actionable may be aggregated to make out a Title VII hostile environment claim. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).  These acts can occur at any time if they're linked in a pattern of actions continuing into Title VII's limitations period. *Id.*  All the alleged acts, however, must be part of the same unlawful employment practice, *id.* at 165–66, meaning they involved "similar conduct ***by the same individuals***, suggesting a persistent, ongoing pattern," *id.* at 167.

*Id.* at 566 (emphasis added).  As such, to implicate the continuing violations doctrine, the conduct both inside and outside the prescribed period must be conduct "by the same individual."  *Id.*

Here, the only conduct allegedly occurring within the prescribed conduct is that attributed to Patel, Fretz, Lahr, Lewis, and Weisberg.[5]  Plaintiff does not allege any conduct by Edward within that period.  Therefore, under *Doe*, Edward's conduct cannot be a part of the "same unlawful employment practice" as the alleged acts and conduct by these other individuals.  *Id.*; *see also Oliver*, 921 F. Supp. 2d at 445 ("Acts that are taken by two different supervisors, acting independently, over different time periods generally demonstrate isolated events rather than a persistent, ongoing pattern of discrimination." (citing *Ferguson v. Merck & Co., Ind.*, 2008 U.S.

---

[5]  Defendants do not dispute that the alleged conduct of Patel, Fretz, Lahr, Lewis, and Weisberg occurred within the relevant period.

Dist. WL 205224, at *10 (E.D. Pa. Jan. 23, 2008)); *Wilkins v. ABF Freight Sys.*, 2005 U.S. Dist. LEXIS 20310, at *11 (E.D. Pa. Sept. 15, 2005) (finding no "legal connection" between the acts of two actors sufficient to invoke continuing violations doctrine where complaint was devoid of evidence that the two actors' "actions were anything but the separate courses of two men, each not responsible for the conduct of the other."); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 624 (E.D. Va. 2011) (holding that evidence would not support a single hostile work environment if discovery failed to reveal that the same people were involved in conduct outside and within limitations period).[6]  Accordingly, the continuing violations doctrine does not save Plaintiff's claims to the extent that they rely on Edward's wrongful acts, all of which occurred outside of the prescribed periods.

**CONCLUSION**

For the reasons set forth, the continuing violations doctrine does not apply to the allegations of Edward's conduct.  As such, Defendants' partial motion to dismiss is granted.  Plaintiff's claims are dismissed ***only to the extent that they were based on Edward's alleged conduct***.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[6] Plaintiff attempts to invoke the continuing violations theory by arguing that all of the alleged conduct is instead attributable to a single actor, *i.e.*, her employer, ATI.  Plaintiff has provided no support for this contention.  Further, the language in *Doe* does not support the conclusion that a corporate entity can serve as an "individual" for purposes of the continuing violations doctrine.  Whether the conduct of various employees is attributable to ATI is assessed under vicarious liability principles.  *See Weston v. Pa.*, 251 F.3d 420, 427 (3d Cir. 2001) ("When the hostile work environment is created by a victim's non-supervisory co-workers, the employer is not automatically liable . . . . Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.").